Lizzie Enabnit, Administratrix, Appellee, v. C. A. Hanson, Defendant; John Hetland, Appellant.

No. 45116.

May 14, 1940.

Henry Curvo and Senneff & Senneff, for appellant.

Edward R. Boyle, for appellee.

RICHARDS, J.—Plaintiff declared upon a written instrument that, as set out in the petition, is in terms a promissory note in the principal sum of $404, bearing date of March 23, 1937, payable to plaintiff's decedent, and signed by appellant Hetland and by one Hanson. Though named as defendant in the pleadings, there was no appearance by nor service of original notice upon Hanson, and hereinafter we will refer to Hetland as the defendant. Hetland ·filed answer. It contained a general denial and a plea of fraud in the inception of the instrument, and averments that the delivery of the instrument by Hanson to plaintiff's. decedent was in violation of the terms and conditions upon which Hetland had signed same. Further allegations were that Hetland signed the instrument as a surety only, and that such signing by him was wholly without consideration.

The cause came on for trial before the court and a jury. As evidence in chief plaintiff testified that she had found the note in her decedent's lockbox; that with the note there was no mortgage, that it was wholly unsecured; that Theodore Hanson never signed the note; that the written portion of the note other than the signatures is in her decedent's handwriting and was written with a different ink than were the signatures. Plaintiff then introduced in evidence the instrument sued on, and rested her case. Defendant proceeded with the offering of his evidence. As a witness in his own behalf he was interrogated by counsel, but to certain questions plaintiff interposed the objection that the witness was incompetent to testify concerning the matters to which the questions pertained, because of section 11257, Code 1935, which reads:

"11257. Transaction with person since deceased. No party to any action or proceeding, nor any person interested in the event thereof, nor any person from, through, or under whom

any such party or interested person derives any interest or title by assignment or otherwise, and no husband or wife of any said party or person, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person, or the assignee or guardian of such insane person or lunatic.''

The court intimated he thought the objections were good. Counsel for defendant then made proferts of testimony to which like objections were made. The court later sustained all the objections. Defendant's counsel announced that in view of the rulings there was no further testimony to be offered. Plaintiff then moved for a directed verdict. The motion was sustained, a verdict was returned, and a judgment was rendered for the amount of the instrument against defendant. From the judgment and rulings defendant has appealed.

Appellant predicates error upon the rulings on the objections to the questions and proferts, and upon the ruling on the motion for directed verdict. Prefacing discussion of these assigned errors, we will summarize the pertinent portions of the record.

Preceding the first objection made by plaintiff, the defendant-witness had related that, on the day he signed the instrument, plaintiff's decedent and Hanson had come out in decedent's truck to defendant's place of employment in the country; that Hanson came to the door and asked to see defendant; that defendant went out to the truck where decedent and Hanson were; that then Hanson, decedent and defendant stood near the truck in a group, probably 3 feet apart; that decedent's hearing was good; that while the three were so standing Hanson in presence of decedent said that he, Hanson, wanted defendant to sign a note; that defendant said ''no''; that Hanson said he would get his brother Theodore to sign the note and that he, Theodore, would give a mort-

gage on property in California. The witness, following a statement made by him, that a paper was produced, was asked: "Q. And what did Mr. Enabnit do with it?" The witness answered: "A. He took it out—". To this question the objection of incompetency of the witness under section 11257 was for the first time made. Following a brief discussion of the objection between counsel for defendant and the court, counsel for plaintiff asked and was granted the privilege of interrogating the witness for the purpose of laying a foundation for objections to his testimony. During this interrogating defendant again related the happenings that resulted in defendant being where decedent and Hanson were standing near the truck. The following questions and answers ensued:

"Q. Where they were standing. And the three of you there discussed the matter of this note? A. Yes, sir.

"Q. And there were conversations between Mr. Enabnit and you and Mr. Hanson and you were there? A. Yes, sir.

"Q. And at that time you did sign the note? A. Yes sir.

"Q. Mr. Enabnit participated in the conversations with you? A. To a certain extent he did.

"Q. And you participated in the conversations with him and Clarence Hanson participated in those conversations? A. Yes, sir."

Examination in chief was then resumed, and defendant was asked whether he understood that counsel for defendant did not want witness to reveal any conversation or transaction the witness had with Mr. Enabnit, but with Hanson only, in answer to any interrogations counsel was about to make. The witness answered that he so understood. Defendant was then asked: "Q. Now who handed you Exhibit '3'?" To this question afore-mentioned objection was made and the jury was temporarily excused. Defendant's counsel then offered to prove by defendant's testimony that, on the day defendant signed the instrument, Hanson, in the presence of decedent,

handed to defendant Exhibit 3 and told defendant "that the note—if he would sign it—would not be used until the mortgage referred to in Exhibit No. '3' was executed and delivered and until the brother of C. A. Hanson, Theodore Hanson, had signed it as surety and that this defendant, relying upon those statements, signed said note, handed it back to C. A. Hanson and last he saw it was in C. A. Hanson's possession until he saw it here in court today."

Exhibit 3 was in these words:

"February—1937

"This note of $400.00 and interest shall be and will be secured by this property of 3 Acres east of Modesto Calif. N. E. quarter of Sec. 18 Township — 10. which holds a bank appraisal of $7,800 and is clear of all incumbrance. In case of death or default of payment all expense shall be taken out of the property and payed to said signer of this note who is

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The owner of this property is C. A. Hanson who has received $400.00 from same on a note bearing payment in 1 year with interest as called for C. A. Hanson (signed)."

Next in sequence and in absence of the jury, counsel for plaintiff resumed the interrogating of defendant for laying foundation for objections, and elicited from the witness the following: Exhibit 3 first came into view when Enabnit drew it from his own pocket while Enabnit, Hanson and defendant were there all together; Enabnit did not do much talking but some, a word or so; Hanson said, relating to the California land, "he wants this mortgage to secure the note" but Enabnit made no statement then concerning the land; just before leaving Enabnit referred to this land, and as to what Enabnit said, the testimony of the witness was as follows:

"Q. He said they could keep that paper; Robert Enabnit said that? A. No. Hanson.

"Q. You said Robert Enabnit said it. A. He said some-

thing but he was referring to that they would have to keep this paper for my security.

"Q. Robert told you that? A. No, Hanson told me that but Enabnit he said, — what about this paper; and so Hanson said that he keep this paper for his security; that is all he said.

"Q. That he hold it for his security? A. No, I would keep it; he told me to keep it for my security.

"Q. Did you keep it then? A. Yes, I kept it ever since." * * *

"Q. John, the point is that in your answer which you signed and which was drawn in Mr. Curvo's office you did state that Robert Enabnit made representations in this transaction, didn't you? A. Only just in a certain way about this paper.

"Q. In a certain way he made some representations? A. Yes.

"Q. About that paper? A. Yes.

"Q. About this paper? A. And of course Clarence Hanson represented,—he said he would give Enabnit a mortgage on this land. That is all only that I could keep this paper."

Counsel for defendant then offered to prove by testimony of defendant the following happenings on the occasion already described, all in the presence and hearing of Enabnit, namely, that Hanson asked Hetland to sign a note with him, and Hetland refused; that thereupon Hanson presented Exhibit 3 and made interlineations in it and signed it and gave it to defendant and stated that he, Hanson, would give the mortgage referred to in Exhibit 3 to Enabnit which would make it perfectly safe; that upon Hetland's still refusing, Hanson said he would get his brother, Theodore Hanson, to sign also, and that he would not deliver the note to anyone until he got Theodore to sign it and until the mortgage was made up securing it; that thereupon defendant signed the note all of which was done in the presence and hearing of Enabnit; that after signing the note defendant gave it to Hanson who put it in his pocket and Enabnit and Hanson drove away; that there was no conversation with Enabnit during the time the foregoing matters took

place. Another profert was made to prove by defendant's testimony that no mortgage which is referred to in Exhibit 3 was ever delivered by Hanson to defendant and that Hetland never received any money from Hanson for signing the note. To all these proferts plaintiff objected on the same ground, based on section 11257, with added objections to portions of the proferts on the ground of incompetency, irrelevancy, and immateriality. The court sustained all objections. Following this ruling counsel for defendant was permitted to make another profert in which he offered to show that the note was signed in blank; that defendant would testify that he had no talk with Enabnit about the transaction whatsoever at any time until after he had signed the note and Hanson had it in his pocket and defendant had Exhibit 3. Plaintiff made the same objections to this profert and they were sustained.

In argument appellant premises that his defense depended on a showing, (a) that defendant signed and entrusted the note to Hanson upon express condition that it be not delivered unless and until it should be signed and mortgage-secured by Theodore, and a showing, (b) that at the time of or before the delivery of the note by Hanson to Enabnit the latter had notice of the condition and of its nonperformance. Appellant's next proposition is that, had the court permitted him to testify to the representations and agreements Hanson made with defendant respecting the conditions, as appellant offered to do, this testimony would have been competent for the purpose of establishing what is contained in (a) above. Appellant adds that this competent evidence to prove (a) does not become incompetent because decedent heard it. But it would seem that in these propositions appellant sets up for argument a question other than the one engendered by plaintiff's objections. The reason is that section 11257, the foundation of the objections, does not relate to competency of evidence. It merely prohibits certain witnesses from giving it. Communications and transactions between a decedent and an adverse party, when pertinent to the issues, may be proven. The provisions

of the statute in question go no further than to declare that to make such proof certain witnesses are incompetent. Campbell v. Collins, 133 Iowa 152, 110 N. W. 435; Schleuter v. Reinking, 189 Iowa 452, 178 N. W. 337. The real question in the case is whether defendant was a witness prohibited from making proof relating to what is contained in (a) above, and as to the paper Exhibit 3 and other matters defendant offered to prove. To that question the record that has been already set out compels an affirmative answer. What transpired near the truck was quite evidently one continuous transaction, in which Hanson, decedent, and defendant each had a personal part in both acts and words. In these acts and words the three were treating matters of respective rights and liabilities that affected them all, and that were interrelated as between each of them and the others. To show what the transaction may have been defendant as a witness could not speak, over the objections that were made. We are of the opinion there was no error in the rulings on plaintiff's objections to the questions and offers of testimony.

The assignment that there was error in directing the verdict not having been argued, we assume appellant concedes that if the rulings on evidence were correct, the directing of a verdict was proper as the record stood. Finding no error the judgment is affirmed.—Affirmed.

HAMILTON, C. J., and OLIVER, HALE, SAGER, MILLER, and MITCHELL, JJ., concur.

BLISS, J., takes no part.